IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Donald C. Kupperstein, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| Charles D. Baker in his official capacity as | ) | |
| Governor of Massachusetts, | ) | |
| | ) | |
| and | ) | JURY TRIAL IS DEMANDED |
| | ) | |
| Richard  J. McMahon, | ) | |
| Defendants | ) | |

## VERIFIED COMPLAINT

## I.   INTRODUCTION

1.     On November 21, 2014, Donald C. Kupperstein ("Kupperstein"), a Massachusetts attorney, performed ministerial duties in connection with a real estate closing.

2.     The Property was a distressed property that required extensive capital investment to improve the Property and to ready it for sale.  On November 22, 2014, Kupperstein agreed to lend money to the Grantee to provide materials and labor for rehabilitation of the real estate conveyed, which was to be repaid upon sale of the real estate after rehabilitation.  Kupperstein secured the loan by filing a mechanics lien and he perfected his lien in Massachusetts Bristol Superior Court ("Bristol Superior").

3.     On July 7, 2015, the Executive Office of Health and Human Services ("EOHHS"), a Cabinet level agency under the Governor of Massachusetts, sued Kupperstein in Massachusetts Suffolk Superior Court ("Suffolk Superior"), asserting in its verified complaint

that it held a valid lien and a perfected claim against the real estate conveyed (the "Property")

and that the conveyance was invalid.

4.      On August 31, 2015, Suffolk Superior dismissed the fraud count in EOHHS'

complaint.

5.      On April 20, 2016, Suffolk Superior entered summary judgment findings in

Kupperstein's favor, ruling that EOHHS was not entitled to rescission of the deed to the property,

nor to declaration that the real estate conveyance was invalid; and affirming the validity of the

real estate transfer of the Property.

6.      On May 17, 2016, EOHHS filed a petition with the Massachusetts Bristol County

Probate and Family Court ("Bristol Probate") seeking, *inter alia*, an order that the Property be

sold to provide funds to satisfy EOHHS' purportedly valid lien and claim.

7.      Kupperstein, as creditor of the Grantee and holder of a mechanics lien against the

Property which had been perfected in Bristol Superior, objected to EOHHS's petition.  The

Property had already been sold to the Grantee, and Suffolk Superior had already found that the

deed to the Grantee was valid.

8.      On November 17, 2016, Bristol Probate adjudged that the conveyance of the

Property was invalid and that the Property remained an asset of the Estate of Fred W. Kuhn

("Kuhn"), the Grantor's father.

9.      There is no basis in law for the judge's decision, and, where that decision is

subject to the Massachusetts Uniform Probate Code, the judge's role is essentially ministerial,

and equitable considerations are not available in Bristol Probate.  In fact,   G.L. c.190B, § 3-

803(e) says that equitable relief is only available through a petition to the Supreme Judicial Court

of Massachusetts. (the "SJC").

10.    EOHHS embarked on a campaign to discredit Kupperstein personally and professionally in order to support subsequent arguments that Kupperstein's conduct was fraudulent; and that his legal filings and motions were vexatious.

11.    EOHHS engaged in improper use of civil legal procedures for an unintended, malicious, and/or perverse reason.    EOHHS injured Kupperstein intentionally, or was so utterly indifferent to his rights that it acted as if such rights did not exist.

12.    EOHHS had and has a duty to refrain from engaging in malicious abuse of process and also from violating Kupperstein's civil rights.  EOHHS violated that duty; those violations of that duty caused Kupperstein injury and damage which violated Kupperstein's civil rights and form the basis for the instant complaint.

13.    The injury and damage to Kupperstein caused by EOHHS' and Bristol Probate's lawless acts were under color of law.  The acts include intimidation, confiscation of property, imprisonment, reputational damage, and willful deprivation of rights and privileges protected by the Constitution or laws of the United States.

## II.    **<u>PARTIES</u>**

14.    Plaintiff Donald C. Kupperstein is a citizen of Massachusetts, a Massachusetts lawyer and a Massachusetts notary public, whose office is located at 704 Foundry Street, South Easton, Bristol County, Massachusetts.

15.    Defendant Charles D. Baker is sued in his official capacity as Governor of Massachusetts pursuant to the Massachusetts Tort Claims Act, M.G.L. c. 258 §2; and as a civil action for deprivation of rights pursuant to  42 U.S.C. § 1983.  The Governor's office is located

at the Massachusetts State House, 24 Beacon Street, Boston, Massachusetts.

16.     Defendant Richard J. McMahon ("McMahon") abridged privileges guaranteed to Kupperstein under the fourteenth amendment to the United States Constitution, and deprived Kupperstein of liberty and property without due process of law. McMahon is an Associate Justice of Bristol Probate, and his office is located at Bristol Probate, 289 Rock Street, Fall River, Massachusetts.  McMahon is sued as an individual, and not in his official capacity as Associate Justice.

## III.    JURISDICTION AND VENUE

17.     The United States District Court for the District of Massachusetts has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331; and the United States District Court for the District of Massachusetts has supplemental jurisdiction over this action pursuant to Title 28 U.S.C. § 1367.

18.     Venue is proper in the United States District Court for the District of Massachusetts pursuant to Title 28 U.S.C. § 1391(b).

19.     Some of McMahon's acts were as an official officer of Massachusetts under color of law, and some were ultra vires his authority and for which he is individually liable.  This action seeks relief against McMahon for acts ultra vires his authority.  This honorable court's supplemental jurisdiction over these claims is pursuant to Title 28 U.S.C. § 1367.

## IV.    CERTIFICATION OF QUESTION OF LAW

20.     Kupperstein moved Bristol Probate to recognize that it lacked subject matter jurisdiction over the Property.   Bristol Probate denied Kupperstein's motion without comment or report.  Kupperstein asks this honorable court to certify that question of law to the SJC pursuant to Section 1 of Rule 1:03: Uniform Certification of Questions of Law.

## V.    STATUTE OF LIMITATIONS

21.    Injury to Kupperstein accrued on October 19, 2017 when, *inter alia*, Bristol Probate ordered confiscation of Kupperstein's property, declared that the mechanics lien perfected in Bristol Superior was void, declared that judgment on the mechanics lien was void, declared that the execution issued by Bristol Superior on that judgment was void; declared that the sheriff's levy against the Property was void, and ordered that Kupperstein could not file any documents relating in any way to the Property without prior permission of Bristol Probate.

22.    Economic harm to Kupperstein flowed directly from Bristol Probate's October 19, 2017 Order.

23.    EOHHS efforts to discredit Kupperstein personally and professionally and to sully his reputation followed directly and proximately from the Bristol Probate October 19, 2017 Order, and Kupperstein was harmed by the effect of those efforts.

## VI.    FACTS

24.    Fred W. Kuhn  began accepting Medicaid payments from EOHHS through the Massachusetts Division of Medical Assistance ("DMA") in 2009 when he was moved into a nursing home; and EOHHS did not get reimbursed for payments made on Kuhn's behalf.

## A.    THE PROBATE ESTATE OF FRED W. KUHN

25.    Kuhn died on September 17, 2013.

26.    Kuhn's wife had died on August 3, 1999 and Kuhn did not remarry.

27.    Kuhn left a will.

28..    On January 21, 2014 a Petition for Formal Probate of Will with Appointment of Personal Representative was filed in Bristol Probate by Attorney Austin W. McHoul ("McHoul") who had been hired for this purpose by Carol A. Thibodeau ("Thibodeau"), Kuhn's only daughter.

29.     Bristol Probate Docket Sheet entry # 9 for Case No. BR14P0127EA indicates that a Decree and Order on Petition for Formal Adjudication was signed and approved by Hon.Anthony R. Nesi ("Nesi") on March 27, 2014.

30.     Thibodeau was approved as Personal Representative ("PR") to administer the Estate of Fred W. Kuhn ("Estate of Kuhn").

31.     Kuhn's will was allowed and admitted to probate on March 27, 2014.

32.     On April 3, 2014; Letters of Authority was sent by Bristol Probate to Thibodeau notifying her that:

(a)  she was appointed as PR;  (b) she was to administer the estate as PR without supervision; (c) her bond was approved, and;  (d) her father's will was allowed and admitted to probate.

33.     Pursuant to G.L. c.190B, § 3-101, allowance of the will made Thibodeau the owner of her father's real estate.   .

34.     On November 21, 2014, Thibodeau conveyed real estate she then owned to Thomas E. Sheedy, as he is Trustee of Reservoir Street Realty Trust.

35.     On May 2, 2016, EOHHS filed a General Petition with Bristol Probate seeking an order that Thibodeau sell real estate to pay to EOHHS money purportedly owed by her father's estate.

36.     Bristol Probate (McMahon, J.), upon the petition of EOHHS, wrongfully disregarded the March 24, 2014 formal testacy proceeding of the probate court (Nesi, J.)

37.     On May 2, 2016 and at all times thereafter, Bristol Probate lacked subject matter jurisdiction over the real estate that EOHHS petitioned to be sold.

38.     Disregarding the March 24, 2014 formal testacy proceeding was improper because "A formal testacy proceeding results in an adjudication by the court. A Formal Decree is reversible only on appeal and may be vacated only on limited grounds. G.L. c.190B, § 3-412 and § 3-413.

39.     "Unlike supervised administration, once a formal decree is issued, the court's involvement ends as to that proceeding." MUPC Procedural Guide  § 4-418.

40.     Decrees, orders and judgments of Bristol Probate (McMahon, J) where it has wrongly usurped subject matter jurisdiction are void *ab initio*.

41.     A probate court is not an appellate court; and, therefore, its decrees, orders and judgments cannot reverse, vacate, or set aside prior decisions of Massachusetts probate and Massachusetts superior courts.  Restatement (second) of Judgments, *§ 24 and § 26*; *Abrahamson v. Lebold Estate*, 89 Mass. App. Ct. 223 (2016). ["G. L. c. 190B, § 3-803(e), bars the award of equitable relief in the trial court."]

## B.     THE REAL ESTATE TRANSACTION

42.     On or before November 5, 2014, Thibodeau telephoned Thomas E. Sheedy ("Sheedy") and asked him if he wanted to acquire the Property at 346 Reservoir Street, Norton, Massachusetts .

43.     Sheedy, who is in the business of finding distressed property for his clients, says he told Thibodeau that he would look at the Property to see what it was worth; and that after he looked at the Property, he would call her back.

44.     Sheedy began his evaluation by examining the Assessors Field Card for the Property.  Sheedy compared the assessor information for the Property with assessor information for other properties in the neighborhood.

45.     Sheedy visited the Property on November 6, 2014, and saw that the house had been left open to the elements for a long time; that the interior gypsum walls had been ripped off the studs; that the copper plumbing had been removed from within the walls; that the electrical wiring had been removed from within the walls; that the building lot was littered with beer bottles and hypodermic needles; and that the Property was otherwise in substantial disrepair.

46.     Town of Norton Water Department personnel confirmed to Sheedy that the Property had been vacant for more than two years; that the Property had no heat and that the water pipes had burst due to winter freeze, and when the water pipes had thawed, the Property had flooded and water cascaded down Reservoir Street, whereupon the water department turned off the water supply to the Property.

47.     Sheedy estimated the fair market value of the Property (a "wasted" building on a non-conforming, "grandfathered" lot) to be $20,000.00…. ($50,000.00 for the land less $30,000.00 estimated cost of acquisition and deconstruction).

48.     At the time of Kuhn's death, the Property was worth $65,000.00 according to a certified real estate appraisal he ordered.

49.     On November 10, 2014, Kupperstein was hired to examine title to the Property.

50.     On November 13, 2014, Kupperstein examined the records of the Bristol North District Registry of Deeds ("Registry of Deeds") and found that on July 9, 2014, the Property had been taken by the Town of Norton for unpaid taxes; and Kupperstein also found a MassHealth lien of record.

51.     "MassHealth" is an alias used by the Division of Medical Assistance (DMA) for its Medicaid and Children's Health Insurance programs.

52.     Kupperstein knew that the purpose of the MassHealth lien, a "lifetime" lien, was to ensure that the Property would not be sold during the Medicaid recipient's lifetime without DMA being informed.

53.     Kupperstein knew that the MassHealth lien became invalid upon Kuhn's death.

54.     On November 13, 2014 Kupperstein visited Bristol Probate where he reviewed Case No. BR14P0127EA, the Estate of Fred W. Kuhn.

55.     Kupperstein saw that on April 3, 2014 (a) Letters of Authority for appointment of PR issued; (b) the PR appointed was Thibodeau; (c) Thibodeau was authorized to act as PR without supervision; (d) the will of Fred W. Kuhn was approved and admitted to probate; (e) Thibodeau was the sole devisee of real estate under the will; (f) no inventory of the Estate of Kuhn had ever been filed; (g) no appraisal of Estate of Kuhn assets had ever been filed by the PR; (h) no Representation of Insolvency had been filed by the PR; and (i) no License to Sell had ever been requested by the PR..

56.     Upon completion of his review and examination of the records, Kupperstein reported his findings to his client, Sheedy; and Sheedy instructed Kupperstein to prepare a deed

and other documents necessary and convenient to effectuate transfer of the Property into a Massachusetts Real Estate Trust.

57.      Sheedy spoke with Thibodeau on or about November 15, 2014, and Thibodeau invited Sheedy to meet her at her residence on November 22, 2014.

58.      Sheedy asked Kupperstein, who is a Massachusetts Notary Public, to attend the meeting so that Kupperstein would be available to notarize the deed.

59.      Thibodeau invited a friend and advisor, Robert Saint Jean, to the meeting.

60.      Thibodeau and Saint Jean discussed conveying the Property to the Reservoir Street Realty Trust ("Trust"); they had calculated that the cost of refurbishing the house, paying back taxes, water bills, and sewer bills to the Town of Norton, paying overdue utility and other bills, combined with the risk, cost and effort of improving the Property was not something Thibodeau wanted to get herself involved with.   She said that she just wanted to be rid of it.

61.      Thibodeau, individually, chose to convey the Property to the Trust.

62      Thibodeau knew that the Property had been taken by the Town of Norton for non-payment of taxes.

63.      Sheedy said he would pay to redeem the Property from the Town of Norton.

64.      Any encumbrance not listed on a quitclaim deed known by the parties to the conveyance will continue to be an obligation of the grantor.

65.      Kupperstein listed the redemption information and consideration on the quitclaim deed; and notarized the deed as being the grantor's free act and deed.

66.       Kupperstein recorded the deed on November 24, 2014 at the Registry of Deeds.

67.      There was nothing unique or unusual about the conveyance of the Property by Thibodeau to the Trust.

68.     Kupperstein knew that when Bristol Probate allowed Kuhn's will and admitted it to probate, Thibodeau's title to the Property vested in Thibodeau, individually, effective September 17, 2013, the date of Kuhn's death.

69.     Examination of Kuhn's probate file revealed that EOHHS acting through the Division of Medical Assistance (DMA) did not have a valid lien on the Property.

70.     Examination of Kuhn's probate file revealed that DMA had failed to file and perfect a claim against the Estate of Kuhn, and had thereby waived its ability to collect debt from the Estate of Kuhn, and its only path to relief would be for DMA to seek equitable relief in the SJC. . *G.L. c.190B, § 3-803(e).*

71.     Even if DMA obtained equitable relief from the SJC, the relief obtained would not apply to the Property which had already been properly conveyed by Thibodeau.

72.     Kupperstein knew that Thibodeau, individually, had legal authority to convey by quitclaim deed her right, title and interest in and to the Property.

73.     Kupperstein hired a certified title examiner who agreed to produce a Title Report for the Property.

74.     The March 2, 2015 Title Report drew the same conclusions as had Kupperstein, and, on Page 23 of the Title Report, the title examiner opined that Kuhn's probate estate contains "No Real Estate".

75.     Improvement of the Property continued through mid-May, 2015, and the Property was then listed for sale with a Multiple Listing Service.

76.     Sheedy's wife, Laura Sheedy, was the listing broker.

77.     On June 4, 2015, Claire Boyle, represented by Peter T. Clark, Esq. ("Clark") signed a Purchase and Sale Agreement ("P&S") to purchase the Property.

78.     On June 5, 2015, Claire Boyle repudiated the P&S; The Trust acknowledged and accepted the repudiation; and all deposits were immediately returned.

79.     On July 7, 2015, Claire Boyle, through Clark, brought a civil action against Kupperstein in Bristol Superior seeking specific performance of the P&S.

80.     On Kupperstein's motion for summary judgment, Bristol Superior adjudged that Kupperstein's only involvement with the conveyance was as closing attorney.

81.     Separately, Kupperstein had entered into a written agreement with the Trust through which he agreed to provide services, labor and materials for improvements to the Property.

82.     Kupperstein filed a mechanics lien against the Property with the Registry of Deeds.

83.     Bristol Superior adjudged that Kupperstein had perfected his mechanics lien, and, in open court, with all parties present, entered judgment on the mechanics lien in favor of Kupperstein in the amount of $250,000.00.

84.     Kupperstein sought and obtained final and separate judgment.

85.     Kupperstein sought and obtained an execution on his judgment.

86.     On February 1, 2017, the Bristol County Sheriff levied on the execution; recorded that levy (which specifically identified the Property) at the Registry of Deeds; and suspended further activity.

87.     On the same day that the Bristol Superior case was filed, EOHHS filed a purported Verified Complaint against Kupperstein in Suffolk Superior.

88.     The Verification was signed by Rhonda MacLeod ("MacLeod").

89.     MacLeod is not a party to the action filed in Suffolk Superior by EOHHS.

90.     On information and belief, MacLeod is not an employee of EOHHS.

91.     MacLeod is an employee of UMass Medical School ("UMMS").

92.     UMMC is not a party to the action filed in Suffolk Superior by EOHHS.

93.     UMMC operates a collections agency that, among other things, recovers money from the estates of recipients of MassHealth benefits.

94.     The name of the agency is Estate Recovery Unit ("ERU").

95.     On July 8, 2015, of EOHHS filed a Notice of Claim in Bristol Probate.

96.     The Notice of Claim that EOHHS filed was invalid in that it was filed more than a year after the approval of the PR's bond, and it did not identify the court where the claim against the Estate of Kuhn was being litigated.  Accordingly it did not meet the stringent requirements of G.L.c.118E, § 32 and  G.L. c.190B, § 3-803(a) and the claim was, therefore, void, invalid and without effect.

97.     EOHHS' Suffolk Superior action against Kupperstein contained counts for (a) fraud;  (b) declaratory judgment; (c) rescission; (d) unjust enrichment, and   (e) statutory claims under G.L. c.118E.

98.     Suffolk Superior dismissed the (a) fraud count upon Kupperstein's motion.

99.     EOHHS sought summary judgment on the remaining counts.

100.    Suffolk Superior denied EOHHS's motion for summary judgment.  Instead, it entered judgment for Kupperstein on the counts for (b) declaratory judgment; (c) rescission, and (e) statutory claims under G.L. c. 118E.  Only the unjust enrichment count (d) remained to be tried.

101.    As a consequence of the Bristol Superior and the Suffolk Superior decisions, the only path by which EOHHS, acting through DMA, could collect funds that had been expended

for Kuhn's benefit under Medicaid would be the "voluntarily" return the Property to the Estate of Kuhn by the Trust.

102.    Upon receiving the decision from Suffolk Superior, EOHHS renewed its efforts to coerce Kupperstein to forsake his legal and ethical responsibilities to his client, and, instead, urged him to convince his client to deed the Property back to the Estate of Kuhn.

103.    Kupperstein refused to assist EOHHS in its efforts to coerce the "voluntarily" return of the Property to the Estate of Kuhn by the Trust.

104.    On May 17, 2016, a Petition was filed with Bristol Probate on behalf of EOHHS requesting (a) that Estate of Kuhn pay $191,746.79 to EOHHS; (b) If the assets of Estate of Kuhn were insufficient to make the payment, the PR should sell the Property and pay EOHHS with the proceeds;, and (c) other equitable relief.

105.    On the day said Petition was filed, EOHHS knew that Thibodeau had sold the Property to the Trust on November 21, 2014.

106.    On the day said Petition was filed, EOHHS knew that there was no valid EOHHS lien on the Property.

107.    On the day said Petition was filed, EOHHS knew that there was no valid EOHHS claim against the Property.

108    On the day said Petition was filed, EOHHS knew that EOHHS has waived all of its claims against the Estate of Kuhn, and, because it was no longer a creditor of the Estate of Kuhn, EOHHS lacked standing to bring said Petition in Bristol Probate.

109.    On the day said Petition was filed, both McMahon and EOHHS knew that Bristol Probate lacked subject matter jurisdiction over the Property.

110.    By filing said Petition, EOHHS violated statutes; and by usurping jurisdiction over said Petition McMahon violated statutes.

## COUNT I
### (Against McMahon for Specific Relief)

111.    Kupperstein repeats and reavers the allegations set forth in prior paragraphs of this complaint as if fully set forth herein.

112.    This count is brought against McMahon individually for acts ultra vires his authority, and is not brought against the sovereign Commonwealth of Massachusetts.

113.    The Honorable Richard J. McMahon ("McMahon") is an Associate Justice of Bristol Probate.

114.    Kuppertein asserts that many of McMahon's acts were ultra vires his authority, and therefore excepted from sovereign immunity.

115.    The ultra vires exception to sovereign immunity, as articulated by the Supreme Court in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)  provides that "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions."   *Larson*, at 689.

116.    Such actions are "ultra vires his authority and therefore may be made the object of specific relief."    *Larson*. at 689-702.

117.    To invoke this exception, a plaintiff must "do more than simply allege that the actions of the officer are illegal or unauthorized." *Ala. Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir.1976).

118.    The complaint must allege facts sufficient to establish that the officer was acting "without any authority whatever," or without any "colorable basis for the exercise of authority." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)

119.    Bristol Probate and all other Massachusetts probate courts are courts of limited jurisdiction.

120.    Under G.L. c.215, § 6, probate courts "have jurisdiction in equity, concurrent with the supreme judicial and superior courts, of all cases and matters relative to the administration of the estates of deceased persons, to wills . . . to trusts created by will or other written instrument and . . . to trusts created by parol or constructive or resulting trusts." The jurisdiction conferred on probate courts by this statute, however, is limited to "jurisdiction within the scope of general equity jurisprudence as to the cases and matters therein named." *Abbott v. Gaskins*, 181 Mass. 501, 505 (1902); *Baldwin v. Wilbraham,* 140 Mass. 459; *Commonwealth v. Andler*, 247 Mass. 580 , and cases cited;  *Jones v. Jones*, 297 Mass. 198, 202; *Golden v. Crawshaw*, 302 Mass. 343; *Lord v. Cummings*, 303 Mass. 457 ["It was the duty of the Probate Court to consider such a point of its own motion."]

121.    "Notwithstanding any contrary or inconsistent provisions of the General Laws, procedure in cases in the probate court within the jurisdiction granted by this section shall be governed by the Massachusetts Rules of Civil Procedure." *G.L.  c.215. § 6*

122.    Rule 12(b)(1) of the  Massachusetts Rules of Civil Procedure states that  "…. the following defenses may at the option of the pleader be made by motion:    (1)  Lack of jurisdiction over the subject matter;…"

123.    "… lack of subject-matter jurisdiction (Rule 12(b)(1) is generally not curable, and certainly not waivable.  Because such a defect is central to the court's basic power to hear the action at all, the issue should remain open throughout, as under prior law". *Jones v. Jones*, 297 Mass. 198, 202 (1937). *Mass. R. Civ. P. 12   Reporters Notes (1973)*

124.    "The lack of subject-matter jurisdiction may be raised at any time up to final judgment on appeal, in any way, by any party, or by the court *sua sponte*." *Id.*

125.    Rule 12(h)(3) of the  Massachusetts Rules of Civil Procedure states that "Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

126.    The instant action is an independent action seeking the specific relief in the form of a declaration that McMahon, purportedly acting as an officer of Bristol Probate,  usurped jurisdiction over EOHHS' May 17, 2016 Petition, despite Bristol Probate's total want of jurisdiction over the Property.

127.    If the specific relief requested is granted, then state court civil contempt judgments against Kupperstein based upon that wrongful usurpation must be vacated.

128.    All of the contempt judgments entered by Bristol Probate against Kupperstein are civil contempt judgments. *In Re Duby*, 451 B.R. 664 (1st Cir. BAP 2011);  <u>See</u> *In Re Goodson*, United States Bankruptcy Court, N.D. Alabama, Eastern Division. Case No. 17-41820-JJR.

(February 5, 2018). ["where the debtor can avoid incarceration by taking some additional action or that the purpose of the Order is to coerce compliance with a previous order, then the matter is one of civil contempt"]

129.     When McMahon usurped jurisdiction over EOHHS' May 17, 2016 Petition, he knew that Bristol Probate lacked jurisdiction over the Property which the Trust had acquired from Thibodeau, because there is "no arguable basis on which [Bristol Probate] could have rested a finding that [it] had jurisdiction." See *Nemaizer v. Baker*, 793 F.2d 58 (1986) citing *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972).

130.     A judgment is void if the court from which it issues lacked jurisdiction over the parties, lacked jurisdiction over the subject matter, or failed to provide due process of law. See 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure Section 2862, at 198-200 (1973).

131.      "A court must vacate any judgment entered in excess of its jurisdiction." *Lubben supra.* at 649.

132.     Massachusetts follows the rule in *Lubben*.  See *Harris v.Sannella*, 400 Mass. 392 (1987)

133.     When, as here, a court has not explicitly noted why it assumed jurisdiction over a suit, appellate courts will independently examine the record to determine whether a reasonable basis existed for the lower court's implicit finding that it had jurisdiction. *See Lubben.* at 647 n. 4

134.     Upon motion of any party to the instant action, the SJC will certify the question of law presented.  See Section 2 of Rule  1:103 Uniform Certification of  Questions of Law.

135.    Accordingly, Kupperstein respectfully requests this honorable court to seek certification of the question of law regarding wrongful usurpation of jurisdiction by the Massachusetts probate court.

136.    McMahon was aware of his lack of subject matter jurisdiction, because Kupperstein filed and argued a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

137    McMahon knew that a Petition filed by EOHHS in Bristol Probate was seeking relief for matters over which Bristol Probate lacked subject matter jurisdiction.

138.    McMahon usurped jurisdiction over the Property that had been conveyed by Thibodeau, individually, and which Suffolk Superior had adjudged to have been legally conveyed by Thibodeau to the Trust.

139.    Clearly McMahon was aware of the Suffolk Superior decisions and judgments because he refers to them in his decision dated November 14, 2015.

140.    Clearly McMahon was aware of the Bristol Superior decisions and judgments because he reversed them in his October 19, 2017 Decree.

141.    McMahon's wrongful acts harmed Kupperstein.

142.    McMahon ordered that "The deed from Reservoir Street Realty trust to Donald C. Kupperstein as Trustee of Norton Realty Trust shall be void and without force or effect".

143.    This order is wrongful because it exceeds the equity jurisdiction and the authority of Bristol Probate.

144.    McMahon ordered that "Neither Thomas E. Sheedy nor Donald C Kupperstein

either individually or as Trustee or in any other capacity shall execute or record any further documents concerning 346 Reservoir Street, Norton, Massachusetts without further order of this Court.

145.     This order is wrongful because it abridges Kupperstein's right to file for relief in the United States Bankruptcy Court.  "A state court cannot enjoin plaintiffs from prosecuting or appealing an in personam action in a federal court which has jurisdiction of the parties and the subject matter, nor can this federal right be divested by state contempt or other proceedings, even though a judgment of a state court in the same controversy has already been rendered against certain petitioners. *Donovan c. City of Dallas*, 377 U.S. 408, 408-414 (1964)..

146.     Disregarding the *Donovan* decision, McMahon, at the behest of EOHHS, found Kupperstein in civil contempt of court for failure to obtain Bristol Probate's permission before filing a Petition seeking Chapter 7 relief in the United States Bankruptcy Court.

147.     McMahon ordered that "The Notice of Contract filed by Donald C. Kupperstein with the Bristol County Northern District Registry of Deeds at Book 22341 Page 137 shall be without force or effect concerning 346 Reservoir Street, Norton. Massachusetts."

148.     This order is wrongful because it exceeds the equity jurisdiction and authority of Bristol Probate.

149.     McMahon ordered that "The Writ of Execution on Money Judgment in favor of Donald C. Kupperstein, Esq against Thomas E. Sheedv Trustee and Beneficiary of Reservoir Street Realty Trust u/d/t dated November21 2014 and recorded at the Bristol County Northern District Registry of Deeds at Book 23578 Page 244 shall be without force or effect concerning 346 Reservoir Street Norton, Massachusetts."

150.     This order is wrongful because it exceeds the equity jurisdiction and the authority

of Bristol Probate.

151.     A Writ of Execution is a legal document that allows a sheriff to attach any non-exempt personal property of the debtor and hold it for sale at a public auction for the purpose of satisfying the judgment. See Mass. R. Civ. P.  Rule 69; G.L. c.235; G.L. c.236.

152.     The Bristol County Sheriff levied on the Property on February 1, 2017, more than six months prior to the entry of the October 19, 2017 Decree.

153.     McMahon ordered that "Any and all other documents executed and/or recorded by either Thomas E. Sheedy or Donald C. Kupperstein individually or as trustee or in any other capacity, prior to this Order or after the date of this Order concerning 346 Reservoir Street, Norton, Massachusetts, shall be without force or effect. "

154.     McMahon ordered that "Neither Thomas E. Sheedy,  Donald C. Kupperstein or anyone acting on their behalf(s) or at their direction(s) either as individual(s) or as Trustee(s) individually or in any other capacity shall enter the property for any reason without further order from this Court.

155.     This order is wrongful because it deprives Kupperstein of liberty and property rights guaranteed to him under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

156.     McMahon knew that Kupperstein had filed for Chapter 7 bankruptcy on January 11, 2018, and that an automatic stay was in effect.

157.    On January 12, 2018, as an Associate Justice of Bristol Probate, McMahon adjudged Kupperstein to be in civil contempt for Kupperstein's failure to deliver to the Estate of Kuhn an entry key to the Property.

158    McMahon knew that Kupperstein had no key to the Property.

159.    McMahon put Kupperstein in jail until Kupperstein would deliver up a key which McMahon knew Kupperstein did not have.

160.    Kupperstein remained in jail until arrangements were made for a locksmith to be hired to create a key for the Property.

161.    By violating the bankruptcy court stay and ordering Kupperstein to jail, McMahon abridged the protection guaranteed to Kupperstein under the Fourteenth Amendment to the United States Constitution.

162.    McMahon is individually responsible to Kupperstein for the consequences of those acts which were in excess of his express or implied powers.

163.    When McMahon wrongfully put Kupperstein in jail, McMahon committed a tort called "false imprisonment", and McMahon is individually responsible for what he did.  See *Forgie-Buccioni v. Hannaford Bros., Inc.,* 413 F.3d 175 (1st Cir. N.H. 2005),

## COUNT II
### (Against the Governor of Massachusetts under the MTCA)

164.    Kupperstein repeats and reavers the allegations set forth in prior paragraphs of this complaint as if fully set forth herein.

165.    Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances.  *G.L. c.258, § 2*

166.    Massachusetts is protected against law suits against it unless certain rules are followed by the Plaintiff; and one such rule requires that a Letter of Presentment be given to the Governor at least six months before the law suit is commenced, so that there is opportunity to settle the claim.

167.    A Letter of Presentment was sent to Governor Baker on February 25, 2019.  A true copy of that letter, without attachments, is annexed hereto and is made a part hereof.

168.    EOHHS engaged in improper use of civil legal procedures for an unintended, malicious, and/or perverse reason.

169.    When EOHHS sued Kupperstein in Suffolk Superior, EOHHS described Kupperstein's role in the following way:

*"Defendant Attorney Donald C. Kupperstein effectuated and facilitated the signing of the purported Deed in collusion with Sheedy and, on information, at Sheedy's behest.  Based on Attorney McHoul's representations in a letter dated November 25, 2014 and sent to MassHealth (attached hereto as* Exhibit 2)*, as well as the purported Deed itself (Exhibit 1), Attorney Kupperstein accompanied Sheedy to Carol's home, modified the terms of the purported Deed via handwriting, verified the new terms with his initials, and notarized the purported Deed. According to Attorney McHoul's letter, Carol had never met Sheedy or Attorney Kupperstein prior to the visit by those two Defendants to effectuate the signing of the purported Deed. See*

23

*Exhibit 2. Attorney Kupperstein has an address of 704 Foundry Street, South Easton, MA 02375."*

170.     In Bristol Probate, EOHHS filed a Complaint for Civil Contempt against me in which EOHHS claimed that Kupperstein was a beneficiary of the Trust even though EOHHS knew that Kupperstein was not a beneficiary of the Trust.

171.     EOHHS' Complaint for Civil Contempt sought disgorgement from Kupperstein of funds not actually available.   The Complaint was instituted without probable cause.  EOHHS knew that Kupperstein received no funds from rental of the Property.

172.     EOHHS instituted the Complaint for Civil Contempt with malice. It conjured fictional sources of income.

173.     The United States Supreme Court has declared "the principle of actual availability . . . has served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." *Heckler v. Turner,* 470 U.S. 184, 200 (1985).

174.     In 2017, the SJC recognized that "Massachusetts is effectively "conjuring [a] fictional" resource…." *Daley v. EOHHS*, 477 Mass. 188, 202 (2017)

175.     One of the paragraphs in the October 19, 2017 Order issued by Bristol Probate on EOHHS' Complaint for Civil Contempt, stated the following:

  *"Neither Thomas E. Sheedy nor Donald C. Kupperstein either individually or as Trustee or in any other capacity shall execute or record any further documents concerning 346 Reservoir*

*Street, Norton, Massachusetts* [the "Locus"] *without further order of this Court.*"

176.   Because McMahon had disregarded and/or reversed the decisions made in Suffolk Superior and Bristol Superior, Kupperstein had virtually no assets and significant debt; and he petitioned for relief from the United States Bankruptcy Court.

177.   Schedule  A of Kupperstein's January 11, 2018 bankruptcy petition required him to identify all real estate in which he had an interest.

178.   Kupperstein listed interest in the Property subject to EOHHS' lien and subject to rescission by Bristol Probate.

179.   According to the United States Supreme Court, a state court cannot enjoin plaintiffs from prosecuting or appealing an *in personam* action in a federal court which has jurisdiction of the parties and the subject matter, nor can this federal right be divested by state contempt or other proceedings, even though a judgment of a state court in the same controversy has already been rendered.

180.    Even so, EOHHS filed and argued a second Complaint for Contempt in Bristol Probate against Kupperstein alleging that by filing a petition in U.S. Bankruptcy Court, Kupperstein violated an order of Bristol Probate.

181    Bristol Probate held Kupperstein in civil contempt of court; and sentenced Kupperstein to thirty days in jail.

182.   EOHHS engaged in vexatious litigation asserting claims in bad faith and without an honest and reasonable belief in their validity.

183.    The obvious intent of the litigation was to coerce Kupperstein to surrender his Property to EOHHS's control.

184.   EOHHS was negligent in retaining the lawyers who abused process, trampled on

Kupperstein's civil rights under color of law, and acted to deprive Kupperstein of his property and his liberty.

185.    Massachusetts is responsible for the negligence of its agents that results in injury in tort.

186.    EOHHS harmed Kupperstein intentionally, and/or was so utterly indifferent to Kupperstein's rights that it acted as if such rights did not exist.

187.    EOHHS has a duty to refrain from engaging in malicious abuse of process and also from violating civil rights.

188.    EOHHS violated that duty; those violations caused Kupperstein injury; and he was damaged thereby.

189.    Because EOHHS and Bristol Probate are agencies of Massachusetts, Massachusetts is responsible for their state employees' negligent and/or wrongful acts in tort.

190.    Sovereign immunity limits the Commonwealth's liability for negligent and/or wrongful acts in tort to $100,000.00.  See *G.L. c.258*.

191.    The harm to Kupperstein for negligent and/or wrongful acts in tort exceeds $100,000.00.

Wherefore, Donald C. Kupperstein prays for the following relief:

a.    Against Richard J. McMahon, individually, in an amount to be determined by a judge or jury, but not less than the amount of $250,000.00 which is the amount that Bristol Superior awarded Kupperstein, and which McMahon wrongfully vacated through wrongful acts in tort that were ultra vires his official capacity; and for interest, costs, and attorney's fees in connection therewith;

b.    Against Charles D. Baker as he is Governor of Massachusetts in an

amount to be determined by a judge or jury, but not more than $100,000.00, which is the maximum amount available under the Massachusetts Tort Claim Act;

       c.     For interest, costs, attorney's fees and punitive damages where available for abridgement of rights protected under the Federal Civil Rights Act and the Fourteenth Amendment to the United States Constitution; and,.

       d.     For such further relief as this court and/or jury deems mete and just.

**Kupperstein demands trial by jury on all counts so triable.**

Respectfully submitted,

*/s/ Donald C. Kupperstein*

Donald C.  Kupperstein
BBO No. 543683
704 Foundry Street
South Easton, MA  02375
(508) 230-0363
dkupperstein@comcast.net

**Dated: October 16, 2020**

## VERIFICATION

I, Donald C. Kupperstein, hereby verify that the facts and allegations set forth in my Verified Complaint are true, and the Letter of Presentment annexed hereto as an exhibit,(w/o attachments), is a true copy of the original.

Sworn under pains and penalties of perjury on October 16, 2020 at South Easton, MA.

/s/ *Donald C. Kupperstein*