UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
**DONALD C. KUPPERSTEIN,**                           )
                                                    )
      **Plaintiff,**                                )
                                                    )
      **v.**                                       )      **Civil Action No.**
                                                    )      **20-11868-FDS**
**CHARLES D. BAKER, in his official**                )
**capacity as Governor of Massachusetts;**           )
**RICHARD J. MCMAHON; MARYLOU**                      )
**SUDDERS, Secretary of the Executive**              )
**Office of Health and Human Services;**             )
**DANIEL TSAI, Director of the Office of**           )
**Medicaid; RHONDA MACLEOD; and**                    )
**AUSTIN MCHOUL,**                                   )
                                                    )
      **Defendants.**                               )
_____)

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, C.J.**

     This action arises out of a dispute that has been the subject of at least three other court

proceedings.  Plaintiff Donald C. Kupperstein, an attorney proceeding *pro se*, asserts claims

against defendants Charles D. Baker, Governor of Massachusetts; Richard J. McMahon,

Associate Justice of the Probate and Family Court; Marylou Sudders, Secretary of the Executive

Office of Health and Human Services; Daniel Tsai, Assistant Secretary for MassHealth and

Director of the Office of Medicaid; Rhonda MacLeod, a revenue manager at University of

Massachusetts Medical School; and Austin McHoul, an attorney.  The amended complaint

purports to assert claims under 42 U.S.C. §§ 1983, 1985(2), and 1985(3) for violation of

plaintiff's constitutional rights and for various state-law torts.

     The underlying facts are set forth in detail in several other judicial opinions, including *In*

re Kupperstein, 943 F.3d 12 (1st Cir. 2019) ("Kupperstein I") and In re Kupperstein, 994 F.3d

673 (1st Cir. 2021), petition for cert. filed ("Kupperstein II").[1]  As described by the First Circuit,

the basic facts are as follows.

Donald Kupperstein, "with the help of his comrade, Thomas Sheedy, improperly

entangled himself with a piece of real property on Reservoir Street in Norton, Massachusetts[,]

and lined his pockets with rents from various tenants he installed."  994 F.3d at 674.

"Kupperstein . . . and Sheedy duped the only child of Fred Kuhn, the property's owner, after

Kuhn's death, into selling the property for a 'pittance.'"  Id. at 674 n.1.  "That property belonged

to the estate of Fred Kuhn . . . and that estate owed a debt to the Massachusetts Office of Health

and Human Services, better known as 'MassHealth.'"  Id. at 675.  "Ultimately, the probate court

voided the property's transfer (so that Kupperstein and Sheedy had no claim to it) and ordered

the duo to pay to MassHealth 'any and all' rents collected from the property."  Id.  "Kupperstein

and Sheedy disregarded the probate court's order and continued to rent the property for their own

gain."  Id.

Kupperstein subsequently filed a bankruptcy petition in an effort to retain the property

and avoid the contempt sanctions, which was not successful.  Id. at 675-76.  As of November

2019, "[Kupperstein had] defied seven state court orders, four arrest warrants, and a mountain of

contempt sanctions."  Kupperstein I, 943 F.3d at 15.

Kupperstein has now filed suit against the governor, a justice of the Probate and Family

Court, and various other state officials and a private attorney.  Defendants have filed three

---

[1] Judicial decisions are subject to judicial notice to establish the "procedural history of the case," but not to establish the "truth of [the] facts recited therein."  Lopes v. Riendeau, 177 F. Supp. 3d 634, 667 (D. Mass. 2016) (quoting Jonas v. Gold, 627 F. App'x 134, 139 (3d Cir. 2015)).  The facts set forth in the opinions of the First Circuit are generally consistent with those set forth in the amended complaint.  However, to the extent they are inconsistent, this Court will not consider them, and will accept the allegations in the amended complaint as true.

separate motions to dismiss the amended complaint, all contending that it fails to state a claim upon which relief can be granted.  Defendants McHoul and MacLeod also contend that the claims against them are barred by issue preclusion.

For the reasons stated below, defendants' motions to dismiss will be granted.

## I.   Background

Unless otherwise noted, the following facts are drawn from the amended complaint, and from documents referred to by the amended complaint or attached to it.[2]

### A.   Parties

Donald C. Kupperstein is an attorney who is licensed to practice in Massachusetts.  (Am. Compl. ¶ 14).

Charles D. Baker is the Governor of Massachusetts.  (*Id.* ¶ 15).  Richard J. McMahon is an Associate Justice of Bristol County Probate and Family Court (the "Probate Court").  (*Id.* ¶ 16).  Marylou Sudders is the Secretary of the Executive Office of Health and Human Services.  (*Id.* ¶ 17).  Daniel Tsai is the Assistant Secretary for MassHealth and the Director of the Office of Medicaid.  (*Id.* at 1; *id.* ¶ 18).  Rhonda MacLeod is a revenue manager at the University of Massachusetts Medical School.  (*Id.* ¶ 19).  Austin McHoul is an attorney.  (*Id.* ¶ 35).

---

[2] On a motion to dismiss, a court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment:  (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint.  *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

Defendant McHoul attached the following records to his motion to dismiss:  (1) an April 20, 2016 order of Suffolk Superior Court (Exhibit 1); (2) a November 29, 2016 order of the Probate Court (Exhibit 2); (3) a December 22, 2017 order of the Probate Court (Exhibit 8); and (4) a April 12, 2018 order of the Probate Court (Exhibit 9). Those documents are sufficiently referred to in the complaint for the Court to consider them.  (*See* Am. Compl. at 34 n. 24 (citing to "*EOHHS v. Estate of Kuhn, et als*, Suffolk Superior at Page 1"); *id.* ¶ 157 (quoting from the Dec. 22, 2017 order); *id.* ¶ 244 (quoting from the Nov. 29, 2016 order); *id.* ¶¶ 162, 188 (referring to the content, although not referencing the date, of the April 12, 2018 order)).  They are also matters of public record.  *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (noting that "[a] court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss" and that "[m]atters of public record ordinarily include documents from prior state court adjudications") (internal quotation marks omitted).

B.      **Factual Background**

In 2009, Fred W. Kuhn began accepting Medicaid payments from the Executive Office of

Health and Human Services ("EOHHS").  (*Id.* ¶ 31).  It was not reimbursed for those payments.

At some point, to secure the debt, totaling $191,746.79, it recorded a lien on a property of his

located at 346 Reservoir Street in Norton, Massachusetts.  (*Id.* ¶¶ 31, 50, 58, 60-61, 115, 233).

On September 17, 2013, Kuhn passed away.  (*Id.* ¶ 32).  His daughter, Carol Thibodeau,

became the personal representative of his estate.  (*Id.* ¶¶ 37, 39(a), 39(b)).  She retained an

attorney, Austin McHoul, to represent the estate in probate proceedings in the Probate Court.

(*Id.* ¶¶ 35, 162).[3]  Upon probate of the will, which the court approved on March 27, 2014,

Thibodeau became the owner of the Reservoir Street property.  (*Id.* ¶¶ 36, 40, 50).

On November 21, 2014, Thibodeau conveyed the property to Thomas Sheedy.  (*Id.* ¶¶ 65,

69).  Thibodeau received "less than $100" and a "tax redemption of $3,379.13" in exchange for

the property.  *Kupperstein I*, 943 F.3d at 16.  Kupperstein prepared, notarized, and recorded the

deed, which listed the "redemption information and [other] consideration" on it.  (Am. Compl. ¶¶

64, 66, 73-74).

According to the amended complaint, Kupperstein loaned Sheedy money to pay for

services, labor, and materials for improvements to the property.  (*Id.* ¶¶ 2, 91).  On November

22, 2014, to secure the loan, he recorded a mechanics lien against the property.  (*Id.* ¶¶ 92-93,

185).

On June 4, 2015, a prospective buyer, Claire Boyle, signed an agreement to purchase the

property.  (*Id.* ¶ 87).  However, "prior to June 5, 2015," McHoul told Clark, her attorney, that

---

[3] As the First Circuit noted, MassHealth is empowered to recover benefits from a beneficiary's estate after death and, in this case, filed a petition with the Massachusetts Probate Court to ensure payment.  *See* Mass. Gen. Laws ch. 118E, §§ 31, 32; *Kupperstein II*, 994 F.3d at 675 n.2.

Sheedy's title to the property was "no good," and Boyle, through Clark, repudiated the agreement.  (*Id.* ¶¶ 85-87).[4]

On July 7, 2015, EOHHS filed a verified complaint against Kupperstein, among others, in Suffolk Superior Court.  (*Id.* ¶¶ 97-98).  The complaint appears to allege that Tsai and Sudders were responsible for the filing of that complaint, and its contents, because of their positions as Assistant Secretary for MassHealth, and Secretary of the EOHHS, respectively.  (*Id.* ¶¶ 17, 18, 214; *id.* ¶ 25 (noting that "the Terms 'DMA', 'EOHHS' and 'MassHealth' refer to Scudders [sic] and Tsai")).  MacLeod verified the complaint.  (*Id.* ¶¶ 98-103).  It contended that the transfer of the property to Sheedy was invalid because of the EOHHS lien and because a notice of claim had been filed against the estate.  (*Id.* ¶ 217).

According to the amended complaint, on April 20, 2016, the Superior Court ruled that EOHHS held a valid lien on the property, but left the sale intact, and dismissed a count of fraud.  (*Id.* ¶ 5).  In addition, it entered judgment in Kupperstein's favor on counts seeking (1) a declaratory judgment that Thibodeau's transfer of the property was "unenforceable because it was done without authorization from the Probate Court"; (2) "rescission of the deed transferring the Property to Sheedy [] on th[at] same ground," (McHoul Supp. Mem., Ex. 1 ("Apr. 20, 2016 Order") at 4); and (3) treble damages pursuant to Mass. Gen. Laws ch. 118E.  (Am. Compl. ¶¶ 109, 111, 219; *see also* Apr. 20, 2016 Order at 4).  Nevertheless, the Court noted that "Thibodeau's sale to Sheedy notwithstanding, the Property may still be subject to a petition in Probate Court seeking a license to sell the Property to satisfy the Estate's debt to HHS, and this court can make no ruling as to the Property's status in that regard."  (Apr. 20, 2016 Order at 5 n.3

---

[4] On July 7, 2015, Boyle apparently filed a civil action against Kupperstein in Bristol Superior Court seeking specific performance of their agreement.  (Am. Compl. ¶ 89).  According to the amended complaint, "[o]n Kupperstein's motion for summary judgment, Bristol Superior dismissed all claims brought against Kupperstein, individually, or in any other capacity."  (*Id.* ¶ 90).

(noting that Mass. Gen. Laws ch. 202, § 20 "defin[es] the conditions under which real property of an estate that has been sold by an heir or devisee may be subject to sale in order to satisfy the debts of an estate")).

On May 17, 2016, EOHHS filed a petition against the estate in the probate proceedings in the Probate Court seeking payment or a forced sale of the property to satisfy Kuhn's debt. (Am. Compl. ¶ 115). Kupperstein filed an objection to the petition on the grounds that he was an interested party. (*Id.* ¶ 241). On November 29, 2016, Judge McMahon, an associate justice of that court, ruled that the transfer of the property to Sheedy was invalid and that the property was still part of Kuhn's estate. (*Id.* ¶ 8; *see also* McHoul's Supp. Mem., Ex. 2 ("Nov. 29, 2016 Order")). Among other things, Judge McMahon ordered that "[n]either [] Sheedy nor [] Kupperstein . . . shall execute or record any further documents concerning [the property] without further order of this Court" and that "[a]ny and all rents received by . . . Kupperstein . . . prior to the date of this Order shall be made payable to EOHHS." (Am. Compl. ¶¶ 146, 244).[5] The decision noted that "The Objector and the Respondent, Donald C. Kupperstein, did not appear for the hearing [on the motion for summary judgment]," but nevertheless cited to several of Kupperstein's arguments. (Nov. 29, 2016 Order at 1, 3, 4).

At some point, it appears that EOHHS filed a complaint for contempt against Kupperstein. (Am. Compl. ¶ 148; *id.* at 46 (attaching an undated complaint for civil contempt filed by EOHHS)). The complaint for civil contempt claimed that an exhibit attached to it— which is not attached to the amended complaint—"show[ed] monthly rent and late fees collected

---

[5] It appears from the complaint that at some point the premises were leased to tenants. (*See, e.g.*, Am. Compl. ¶ 178 ("EOHHS knew that Kupperstein received no funds from rental of the Property"); *id.* ¶ 159 (quoting from an e-mail Kupperstein wrote to McHoul on January 4, 2018, stating that "the tenants have agreed to give [McHoul] a key.")).

by [Kupperstein], totaling $33,150 due to EOHHS." (*Id.* at 46).[6]  On August 4, 2017, "after [a]

hearing," Judge McMahon ruled that Kupperstein was in contempt of court for

"willfully . . . neglect[ing] and refus[ing] to pay any and all rents received from the subject

premises to plaintiff in the amount of $33,150.00" and ordered that he must "pay [the estate] the

sum of $33,150.00 . . . within [] 60 days of the date of this order." (*See* Am. Compl. at 44-45

(attaching that Aug. 4, 2017 order to the complaint)).

On December 22, 2017, "after [a] hearing," Judge McMahon held Kupperstein in

contempt of court for "willfully . . . neglect[ing] and refus[ing] to comply with the orders and

judgments of the Court relative to the subject premises" and ordered that he must surrender the

premises, and pay over any sums in rent to the estate, among other items.  (McHoul Supp. Mem.,

Ex 8 ("Dec. 22, 2017 Order") at 1).  He also ordered Kupperstein to be committed to jail for 30

days, or to pay $5,400 to purge the contempt, but suspended the sentence until March 9, 2018.

(*Id.*; Am. Compl. ¶ 157 (quoting from the order of contempt)).

On January 11, 2018, Kupperstein filed a bankruptcy petition under Chapter 7 and listed

the Reservoir Street property as his property.  (Am. Compl. ¶¶ 148, 184-85).[7]  He did not obtain

---

[6] "Mid-way through 2017, Sheedy passed off his claimed ownership to Kupperstein . . . who kept collecting rent." *Kupperstein I*, 943 F.3d at 17.  The amended complaint does not directly address that transfer, but implies that at some point Kupperstein became the owner.  (*See, e.g.*, Am. Compl. ¶ 185 (noting that Kupperstein listed his interest in the property on a bankruptcy petition); *id.* ¶ 159 (including e-mails between McHoul and Kupperstein about the lease agreement for the property and turning over the keys)).

[7] A petition for bankruptcy typically activates an automatic stay of judicial, administrative, or other proceedings against the debtor.  11 U.S.C. § 362(a).  However, the bankruptcy court found "'good cause' to 'lift[]' the stay and ordered that the state court actions could proceed, except that Schall [the estate's representative] and MassHealth [EOHHS] could 'not seek to enforce against . . . Kupperstein, any judgment with respect to the $191,741.79 MassHealth reimbursement claim . . . .'" *Kupperstein II* at 676.  It also denied a motion by Kupperstein to hold EOHHS in contempt and to impose sanctions against it, finding that "state court actions that 'involved the imposition and enforcement of *sanction awards* against [Kupperstein] did not violate the automatic stay' and, therefore, neither did MassHealth's [EOHHS's] participation in those proceedings." *Id.* at 676-77 (quoting the bankruptcy court's decision) (emphasis added).

Kupperstein appealed those decisions to the district court, and when MassHealth moved to dismiss his appeal based on the "'fugitive disentitlement doctrine' —the rule that a fugitive (usually a criminal one) forfeits the right to appeal the judgment (usually a conviction) he[] [is] fleeing"—the district court granted the motion. *Kupperstein I* at 15-16. Kupperstein appealed that decision to the First Circuit.  *Id.* at 16-17.  Although the First

permission from the Probate Court to do so, and EOHHS filed a second complaint for civil contempt in that court.  (*Id.* ¶¶ 148, 187).  On January 12, 2018, Judge McMahon held a hearing on the complaint and found Kupperstein in contempt.

On April 12, 2018, Judge McMahon ordered that Kupperstein be committed to 30 days in jail for his failure to surrender control of the property to Kuhn's estate, for listing the property as an interest on the bankruptcy filing, (*id.* ¶¶ 148, 162, 188), and for "illegally collecting [] rent . . . in direct violation of th[e] Court's several orders including its order dated November 29, 2016 and its Order on Contempt dated August 4, 2017."  (McHoul Supp. Mem., Ex 9 ("Apr. 12, 2018 Order") ¶ 3).  The sentence was suspended until May 18, 2018.  (*Id.* ¶ 12).  Kupperstein alleges that that sentence was a violation of his constitutional rights because "McMahon had been informed [that] Kupperstein did not have [a key]."  (Am. Compl. ¶ 162).

According to the amended complaint, on March 31, 2020, Judge McMahon sentenced Kupperstein to an additional 60-day commitment.  The amended complaint does not specify the reasons for that sentence.  (*Id.* ¶¶ 140, 253).[8]

### C.   Procedural Background

On October 16, 2020, Kupperstein filed a complaint in this court against Governor Baker and Judge McMahon.  On January 22, 2021, he filed an amended complaint, adding counts against defendants Sudders, Tsai, MacLeod, and McHoul.

---

Circuit noted that it shared the district court's concern for Kupperstein's "serial misconduct and contempt for the state courts," it found that the dismissal had been premature, and remanded the case to the district court to render a decision on the merits.  *Id.* at 16.

On remand, the district court affirmed the bankruptcy court's decision to lift the stay and to deny Kupperstein's motion for contempt and sanctions.  *Kupperstein II* at 677 n.6.  Kupperstein appealed that decision to the First Circuit.  *Id.* at 677.  The First Circuit determined that the bankruptcy court had not abused its discretion in lifting the stay or declining to hold MassHealth in contempt or levy sanctions against it, and that the district court had properly affirmed the bankruptcy court's decision.  *Id.* at 682.

[8] Following a March 2018 court date, Kupperstein missed the three following court dates in his case and was held in contempt two more times.  *Kupperstein I*, 943 F.3d at 18.

Among other things, Count One seeks a declaration that Judge McMahon "wrongfully usurped jurisdiction over EOHHS's May 17, 2016 petition" and an injunction preventing the Probate Court from incarcerating Kupperstein absent further order of this Court.  (*Id.* ¶¶ 16, 132, 139).[9]  Count Two alleges that Governor Baker is vicariously liable for the negligence of the agents of EOHHS and of the Probate Court, and seeks relief against him on that basis under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2.  (*Id.* ¶¶ 15, 198).  Count Three alleges (1) a claim against all defendants under 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments due to Kupperstein's incarceration and loss of property; and (2) that defendants acted in concert in abridging Kupperstein's procedural and substantive due process rights and therefore violated 42 U.S.C. §§ 1985(2) and 1985(3).  (*Id.* ¶ 260).[10]

Although not tied to enumerated counts, the amended complaint also alleges that Sudders and Tsai negligently hired the lawyers who represented EOHHS in the state court proceedings at issue here.  (*Id.* ¶ 191).  It further alleges that Judge McMahon, Sudders, Tsai, MacLeod, and McHoul committed certain unspecified "common law torts" and that they "jointly and severally injured Kupperstein, and directly and proximately caused Kupperstein to suffer financial harm, damage to his reputation, and intentional infliction of emotional distress."  (*Id.* ¶¶ 16-20, 201, 260).  Finally, it alleges that McHoul "tort[i]ously interfered with the Trust's sale of the Property to one Boyle, a Buyer who signed a [purchase and sale agreement] to acquire the [p]roperty." (*Id.* ¶ 257).

All of the defendants have filed motions to dismiss the amended complaint for failure to

---

[9] Count One contains a demand for relief, but does not in fact allege any claim.  The Court will therefore consider it in connection with the other claims alleged against Judge McMahon.

[10] Although Kupperstein has included multiple claims in Count Three, for clarity, the Court will nevertheless refer to it as "Count Three."

state a claim upon which relief can be granted, among other items.  Defendants McHoul and

MacLeod also contend in their motions to dismiss that the claims against them are barred by

issue preclusion.

## II.    <u>Standard of Review</u>

To survive a motion to dismiss, a complaint must state a claim that is plausible on its

face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a claim to be plausible, the

"[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."

*Id.* at 555 (internal citations omitted).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In determining whether a complaint satisfies that standard, a court must assume the truth

of all well-pleaded facts and give plaintiffs the benefit of all reasonable inferences.  *See Ruiz v.

Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175

F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the complaint fails to set forth "factual

allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory."  *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir.

2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir.

2005)).

Where, as here, a party is proceeding *pro se*, any document he or she files "is to be

liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89,

94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks

omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").  *But

see Cintron-Lorenzo v. Departamento de Asuntos del Consumidor*, 312 F.3d 522, 526-27 (1st

10

Cir. 2002) (declining to treat with leniency *pro se* litigant who was an attorney).  However, while

*pro se* complaints "are accorded 'an extra degree of solicitude' . . . even a *pro se* plaintiff is

required to 'set forth factual allegations, either direct or inferential, respecting each material

element necessary to sustain recovery under some actionable legal theory.'"  *Wright v. Town of*

*Southbridge*, 2009 WL 415506, at *2 (D. Mass. Jan. 15, 2009) (quoting *Adams v. Stephenson*,

116 F.3d 464, at *1 (1st Cir. June 23, 1997) (per curiam)).

## III.    Analysis

### A.    Issue Preclusion

Defendants McHoul and MacLeod allege that issue preclusion prevents Kupperstein from

relitigating four issues that are central to his claims:  (1) the validity of the MassHealth lien; (2)

the validity of the transfer of the property from Thibodeau to Sheedy; (3) whether Kupperstein

violated the orders of the Probate Court that resulted in the orders of contempt against him; and

(4) whether the orders of contempt in the Probate Court violated the automatic stay.[11]

Issue preclusion, also known as collateral estoppel, "bars parties from re-litigating issues

of either fact or law that were adjudicated in an earlier proceeding."  *Robb Evans & Associates,*

*LLC v. United States*, 850 F.3d 24, 31 (1st Cir. 2017).  Issue preclusion requires three elements:

(1) a final judgment on the merits in the previous action; (2) the party against whom preclusion is

asserted was a party (or in privity with a party) to the prior action; and (3) the issues in the prior

and current adjudications are identical.  *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837,

843 (2005); *Tuper v. N. Adams Ambulance Serv., Inc.,* 428 Mass. 132, 134 (1998).  In addition,

---

[11] Defendants Governor Baker, Tsai, Sudders, and Judge McMahon have not moved to dismiss the amended complaint on the basis of issue preclusion.  However, "even if [a party] waive[s] *res judicata* as an affirmative defense, a court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste."  *In re Medomak Canning*, 922 F.2d 895, 904-05 (1st Cir. 1990); *see also Arizona v. California*, 530 U.S. 392, 412 (2000).

"[i]ssue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action" that were essential to the earlier judgment.  *Kobrin*, 444 Mass. at 844.

"A nonparty may use collateral estoppel defensively against a party to the original action who had a full and fair opportunity to litigate the issues in question."  *Supeno v. Equity Office Properties Mgmt., LLC*, 70 Mass. App. Ct. 470, 473 (2007).  "The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'"  *Alba v. Raytheon Co.*, 441 Mass. 836, 841-42 (2004) (quoting *Fidler v. E.M. Parker Co.*, 394 Mass. 534, 541 (1985)).

Here, to the extent Kupperstein's claims are based on any of the four identified issues, he is prevented from relitigating them.

The first issue is the validity of the MassHealth lien.  The Superior Court found on April 20, 2016, that the MassHealth lien was valid in a memorandum and order on a motion for summary judgment.  (Apr. 20, 2016 Order at 7).  Kupperstein was a defendant in that action, and the issue of the validity of the lien was actually litigated and disputed.  (*Id.* at 6 ("Defendants contend that . . . the Lien was extinguished by operation of law and [EO]HHS therefore had no valid interest in the Property.")).  The court concluded that there was nevertheless a genuine issue of fact as to whether EOHHS was entitled to summary judgment as to its claim for unjust enrichment, which requires a plaintiff to establish "not only that the defendant received a benefit, but also that such a benefit was unjust," among other items.  (*Id.* at 8 (quoting *Metro Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013)).  It reached that conclusion because it found that "there ha[d] been no determination by the Probate Court as to whether [EO]HHS [was] entitled to an

order compelling Thibodeau as personal representative to petition for a license to sell the Property . . . and in any event, [EO]HHS appear[ed] still to hold the Lien on the Property." (*Id.*). Therefore, it was not clear "whether [EO]HHS's ability to recover from the Property ha[d] or ha[d] not been cut off, and therefore [] whether [] [Kupperstein] ha[d]or ha[d] not been enriched at [EO]HHS's expense." (*Id.*).

Nevertheless, on November 27, 2018, on a second motion for summary judgment, the court entered judgment in favor of EOHHS on the claim of unjust enrichment, among others. (MacLeod Supp. Mem., Ex. 4 ("Nov. 27, 2018 Order")).  While the description of that judgment is brief, a finding that the MassHealth lien was valid is essential to it, because otherwise any benefit received by Kupperstein was not unjust.  In addition, the court noted in its order of judgment that it was taking judicial notice of "the findings . . . [from] its prior decisions in th[e] case, in particular, [a] decision dated December 21, 2017 (Hallal, J.) which specifically [found] that Kupperstein had actual notice of MassHealth's lien and failed to pay it contrary to MassHealth law." (*Id.* at 1-2).[12]

The second issue is the validity of the transfer of the property from Thibodeau to Sheedy. The Probate Court entered an order on November 29, 2016, that "Thibodeau executed an invalid deed and improperly transferred the property to [] Sheedy." (Nov. 29, 2016 Order ¶ 2). Kupperstein objected to the petition, and the issue was actually litigated—although Kupperstein did not appear for the hearing on the motion for summary judgment, in its order, the court noted that "Kupperstein argues neither [] Thibodeau nor the Estate own the property located at 346

_____

[12] The November 29, 2016 ruling of the Probate Court also found that "upon Kuhn's death, the property remained an asset of the Estate of [] Kuhn and subject to EOHHS'[s] Chapter 118E lien."   (Nov. 29, 2016 Order at 3).  However, in that action, "[t]he parties [did] not dispute that EOHHS placed and recorded a lien on the subject property prior to [] Kuhn's death." (*Id* at 4).  That could be because the Superior Court had already found that the MassHealth lien was valid in its April 20, 2016 decision, but in any event, it is not clear that the issue was actually litigated in the Probate Court action.

Reservoir Street." (*Id.* at 3). In addition, that finding was essential to the judgment, which granted EOHHS's petition to force a sale of the property. (*Id.* ¶ 3). To force a sale of the property, the court had to find that the property was still an asset of the estate, (*id.* ¶ 2 ("The property . . . remains an asset of the Estate of Fred W. Kuhn."), which in turn required a finding that the transfer to Sheedy was invalid. (*Id.*).

The third issue is whether Kupperstein is prevented from relitigating whether he committed the violations that resulted in the orders of contempt issued on August 4 and December 22, 2017, and April 12, 2018.[13] On August 4, 2017, Judge McMahon issued a judgment of contempt against Kupperstein for "willfully . . . neglect[ing] and refus[ing] to pay any and all rents received from the subject premises to plaintiff in the amount of $33,150.00." (*See* Am. Compl. at 44 (attaching that Aug. 4, 2017 order to the complaint)). On December 22, 2017, the court issued a judgment of contempt against Kupperstein because he had "willfully . . . neglected and refused to comply with the orders and judgments of the Court relative to the subject premises." (Dec. 22, 2017 Order at 1; Am. Compl. ¶ 157 (quoting the Dec. 22, 2017 order of contempt)). On April 12, 2018, the court issued a judgment of contempt because (1) Kupperstein had failed to surrender control of the property to Kuhn's estate; (2) he had listed the property as an interest on the bankruptcy filing, (Am. Compl. ¶¶ 148, 162, 188); and (3) he had been "illegally collecting [] rent . . . in direct violation of th[e] Court's several orders including its order dated November 29, 2016 and its Order on Contempt dated August 24, 2017." (Apr. 12, 2018 Order ¶ 3). Those were final judgments on the merits, to which Kupperstein was a party, and the issues of whether he committed the violations in question were

---

[13] As noted, the amended complaint alleges that there was another order of contempt on March 31, 2020, but neither party has provided the court with a copy of that order.

essential to the finding of contempt.  It also appears that the issues were actually litigated.  The orders refer to hearings that the Court held prior to finding Kupperstein in contempt, and he has not alleged that he was not at those hearings or did not have notice of them.

The fourth issue is whether the orders of contempt in the Probate Court violated the automatic stay.  The Bankruptcy Court, the District Court, and the First Circuit all determined that they did not, and therefore that Kupperstein's motion for contempt and sanctions against EOHHS for its participation in those proceedings should be denied.  The First Circuit summarized the issue as follows:  "[t]he core dispute is whether the probate court's contempt proceedings and resultant penalties are excepted from the automatic stay (as the bankruptcy court held they were) and therefore MassHealth's participation [in them] did not merit sanctions . . . ." *Kupperstein II*, 994 F.3d at 678-79.  That issue was actually litigated and Kupperstein was a party to the proceedings in question—he filed the motion for contempt and sanctions, and appealed the bankruptcy court's ruling on it.  The issue of whether the contempt proceedings violated the automatic stay was also essential to the bankruptcy court's decision, because if the proceedings did not violate the stay, then there was no basis on which to impose sanctions against EOHHS.  Moreover, an order on a motion for sanctions and contempt is a "judgment" for purposes of issue preclusion.  *Cf. In re Keaty*, 397 F.3d 264, 272-74 (5th Cir. 2005) (reversing and remanding because issue preclusion should have been applied to appellate court's imposition of sanctions on a party's motion for sanctions); *Hirschfeld v. Spanakos*, 104 F.3d 16, 19-20 (2d Cir. 1997) (reversing and remanding because issue preclusion should have applied to appellate court's imposition of sanctions).  And while Kupperstein has filed a petition for certiorari seeking review of the First Circuit's decision, a party is issue precluded even where "the first, or issue preclusive, judgment is still on appeal when the second action occurs."  *In re Kane*, 254

F.3d 325, 328 (1st Cir. 2001); *O'Brien v. Hanover Ins. Co.*, 427 Mass. 194, 200-01 (1998) (adopting majority rule that "a trial court judgment is final and has preclusive effect regardless of the fact that it is on appeal.").

In summary, Kupperstein is barred from relitigating (1) the validity of the MassHealth lien; (2) the validity of the transfer of the property from Thibodeau to Sheedy; (3) whether he violated the orders of the Probate Court that resulted in the orders of contempt against him; and (4) whether the orders of contempt in the Probate Court violated the automatic stay. Accordingly, to the extent his claims are based upon those issues, they will be dismissed under the doctrine of issue preclusion.

### B.   Claims under 42 U.S.C. § 1983

Count Three purports to assert a claim under 42 U.S.C. § 1983 for violations of Kupperstein's rights under the Fourth, Fifth, and Fourteenth Amendments.  That section provides a private cause of action against any "person" who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and [federal] laws."  42 U.S.C. § 1983.  Therefore, to maintain a cause of action under section 1983, a plaintiff must allege, among other things, a "deprivation of a federally secured right."  *Harrington v. City of Nashua*, 610 F.3d 24, 28 (1st Cir. 2010).

Kupperstein's claim that his rights under the Fourth Amendment were violated appears to be based on his allegation that he was "falsely imprison[ed]."  (Am. Compl. ¶ 167); *see Camilo–Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) ("The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action).").

He also appears to allege that he was not afforded procedural due process before his alleged property interest in the property was taken away from him, and he was deprived of

substantive due process because it was taken away from him.  To state a valid substantive due process claim, a complaint must allege that "[a plaintiff] suffered [a] deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience."  *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008).  Similarly, an analysis of a procedural due-process claim proceeds in two steps:  "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### 1.      MacLeod

The complaint alleges that by signing the verified complaint filed in the Superior Court, MacLeod deprived Kupperstein of his rights under the Fourth, Fifth, and Fourteenth Amendments.  (Am. Compl. ¶ 221).

To state a valid claim under section 1983, there must be "[a] deprivation of a right, [and] a causal connection between the [defendant] and th[at] deprivation . . . ."  *Sanchez v. Pereira– Castillo*, 590 F.3d 31, 41 (1st Cir. 2009).  In essence, MacLeod contends that the complaint does not plausibly allege a causal connection between her and the alleged deprivations.

Causation under section 1983 is evaluated according to common-law tort principles.  *Id.* at 50.  Under that approach, a defendant is deemed to have caused a person to be subjected to constitutional deprivation if his or her actions "set[] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Id.* at 50-51 (quoting *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir. 1989)).  Thus, a defendant may be liable for "those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties."  *Sanchez*, 590 F.3d at 51 (quoting *Springer v. Seaman*, 821 F.2d 871, 876 (1st Cir. 1987)).

17

The amended complaint contains only one allegation as to MacLeod—that she verified the July 7, 2015 complaint in the Superior Court.  That verified complaint alleged that the transfer of the property was invalid because of the EOHHS lien, and because a notice of claim had been filed against the estate.  According to plaintiff, "when MacLeod verified the complaint, she knew she swore falsely."  (Am. Compl. ¶ 221).

Although the Superior Court ruled that EOHHS held a valid lien on the property, its ruling left the sale intact.  (*Id.* ¶¶ 109, 111, 219).  Thus, even assuming Kupperstein suffered a deprivation of an established property interest, it is unclear how MacLeod's verification of a complaint in the Superior Court, which left the sale intact, caused that deprivation.  In separate proceedings, the Probate Court held that the transfer was void, and found Kupperstein in contempt (which led to his incarceration).  MacLeod is not alleged to have been a participant in those proceedings or to have been involved in them in any way, nor does the amended complaint allege that the Probate Court somehow relied upon the earlier findings of the Superior Court, aside from noting that it had "indicated that EOHHS may petition for sale of the property in Probate and Family Court."  (Nov. 29, 2016 Order at 3 (noting that the Superior Court had indicated that EOHHS could petition for sale of the property in the Probate Court); Apr. 20, 2016 Order at 5 n.3).  Accordingly, MacLeod did not "set[] in motion a series of acts by others which [she] kn[ew] or reasonably should [have] know[n] would cause others to inflict the constitutional injury."  *Sanchez*, 590 F.3d at 50-51 (quoting *Gutierrez–Rodriguez*, 882 F.2d at 561).

Furthermore, and in any event, Kupperstein is prevented from relitigating the issue of (1) the validity of the MassHealth lien or (2) the validity of the transfer from Thibodeau to Sheedy, and therefore, from contending that the complaint that MacLeod verified was false.

For those reasons, the claim under section 1983 as to MacLeod will be dismissed.

2.      **Judge McMahon**

As noted, Judge McMahon is an Associate Justice of the Probate Court.  (Am. Compl. ¶ 16).  Kupperstein alleges that the orders he issued during the proceedings in question deprived him of his rights under the Fourth, Fifth, and Fourteenth Amendments.

 "Absolute immunity from civil liability applies to any judicial officer for any normal and routine judicial act."  *Becks v. Plymouth County Superior Court*, 511 F. Supp. 2d 203, 206 (D. Mass. 2007).  As long as the judge was performing "[a] judicial act[] within [his] jurisdiction," immunity will apply even if the judge "acted maliciously and corruptly in exercising his judicial . . . functions" or "in the presence of grave procedural errors."  *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) (internal quotations omitted).

The November 29, 2016 judgment that Judge McMahon issued on EOHHS's complaint for a forced sale of the property was clearly a "normal and routine judicial act," *Becks*, 511 F. Supp. 2d at 206.  The orders of contempt that Judge McMahon issued were also clearly "normal and routine."  *Id.*  Judge McMahon is therefore entitled to judicial immunity as long as he was performing acts "within [his] jurisdiction."  *Goldstein*, 719 F.3d at 24.

"[A] proceeding to enforce . . . [an] equitable lien, or in the alternative to obtain compensation for the wrongful use of property subject to such a . . . lien, is within the scope of general equity jurisdiction."  *Locke v. Old Colony Tr. Co.,* 289 Mass. 245, 253 (1935).  Pursuant to Mass. Gen. Laws ch. 215, § 6, "[t]he probate and family court department [] [has] original and concurrent jurisdiction with the supreme judicial court and the superior court department of all cases and matters of equity cognizable under the general principles of equity jurisprudence and, with reference thereto, [] [are] courts of general equity jurisdiction."  Mass. Gen. Laws ch. 215, § 6.  Furthermore, Mass. Gen. Laws ch. 215, § 34 provides that "[p]robate courts shall have like power and authority for enforcing orders . . . in the exercise of any jurisdiction vested in them,

and for punishing contempts of such orders . . . as are vested for such or similar purposes in the supreme judicial or superior court in relation to an action in which equitable relief is sought pending therein."  Mass. Gen. Laws. ch. 215, § 34.

The Probate Court therefore had jurisdiction over the May 17, 2016 petition because the petition sought either payment for the lien or a forced sale of the property to satisfy a debt. Judge McMahon also had jurisdiction to find plaintiff in contempt of his orders pursuant to Mass. Gen. Laws ch. 215, § 34.[14]

Accordingly, Judge McMahon is entitled to judicial immunity, and the claim under section 1983 will be dismissed against him on that basis.

### 3.   Governor Baker

The claim under section 1983 is alleged against Governor Baker in his official capacity. (Am. Compl. at 1; *id.* ¶ 15).  As noted, that section provides a private cause of action against any "person" who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and [federal] laws."  42 U.S.C. § 1983.  However, a "person" under section 1983 does not include state actors in their official capacities.  *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) ("[N]either a state agency nor a state official acting in his [or her] official capacity may be sued for damages in a section 1983 action.").  Accordingly, the amended complaint fails to state a claim under section 1983 against Governor Baker on that basis.

The amended complaint also fails to state a claim under section 1983 because it does not allege that any direct actions taken by Governor Baker caused the alleged harms.  Rather, it alleges that Tsai and Sudders, whom he appointed, caused the harms because (1) they were

---

[14] As noted, the amended complaint also alleges that Judge McMahon issued another order of contempt on March 31, 2020, but neither party has provided the court with that order, and Kupperstein has not alleged anything beyond the fact of the order of contempt and 60-day commitment (which on its own, does not state a claim).

negligent in retaining the lawyers that prosecuted the lawsuits in question, and (2) they were responsible for the filing of the July 7, 2015 complaint, and its contents—which Kupperstein contends were false—because of their positions as Assistant Secretary for MassHealth, and Secretary of the EOHHS, respectively.  But "vicarious liability is inapplicable to . . . § 1983 suits."  *Iqbal*, 556 U.S. at 676; *Brown v. Rhode Island*, 511 F. App'x 4, 5 (1st Cir. 2013).

Accordingly, the claim under section 1983 as to Governor Baker will be dismissed.

### 4.  <u>Sudders and Tsai</u>

The claim under section 1983 is alleged against Sudders and Tsai in their individual capacities.  (Am. Compl. ¶¶ 16-17).  As noted, state officials sued in their individual capacities may be held liable "only on the basis of their own acts or omissions."  *Canales v. Gatzunis*, 979 F. Supp. 2d 164, 171 (D. Mass. 2013).  In addition, "mere negligence by [a] supervisor is not enough to create liability [under section 1983]."  *Snell v. DeMello*, 44 F. Supp. 2d 386, 390 (D. Mass. 1999).  State officials are liable under section 1983 only "when their own action or inaction . . . amounts to gross negligence or deliberate indifference."  *Guzman v. City of Cranston*, 812 F.2d 24, 26 (1st Cir. 1987) (internal quotations omitted).

The amended complaint contains two principal allegations against Sudders and Tsai.  First, it alleges that Sudders and Tsai "were negligent in retaining the lawyers who abused process, trampled on plaintiff's civil rights under color of law, and acted to deprive plaintiff of his property and his liberty, and of procedural and substantive due process."  (Am. Compl. ¶ 191).  It provides no specific factual allegations to support those assertions.  It is therefore entirely conclusory, and the court need not assume it is true.  *Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true.").  Moreover, "mere negligence . . . is not enough," and the amended complaint does not plausibly allege a set of facts that they were grossly negligent or deliberately indifferent in retaining the lawyers in question.

21

*Snell*, 44 F. Supp. 2d at 390.

The amended complaint also alleges that Tsai and Sudders were responsible for the filing of the July 7, 2015 and May 17, 2016 complaints, because of their positions as Assistant Secretary for MassHealth, and Secretary of the EOHHS, respectively.  (Am. Compl. ¶¶ 17, 18, 214; *id.* ¶ 25 (noting that "the Terms 'DMA', 'EOHHS' and 'MassHealth' refer to Scudders [sic] and Tsai")).  Kupperstein contends that at least one of those complaints was "false[]," (*id.* ¶ 221), apparently because "Scudders [sic], Tsai, MacLeod and McHoul knew that there was no perfected creditor's claim on the Property because, under the MUPC [Massachusetts Uniform Probate Code], the acts necessary to establish and perfect a creditor's claim had been time-barred; and it was too late to re-open Kuhn's probate estate case."  (*Id.* ¶ 235).

Sudders and Tsai can only be held liable under section 1983 "on the basis of their own acts or omissions," and there are no allegations that they were in fact directly involved in the filing of the complaint (only that they are responsible for it by virtue of their positions at EOHHS).  *Gatzunis*, 979 F. Supp. 2d at 171.  In addition, as noted, Kupperstein is prevented from relitigating the validity of the MassHealth lien or the transfer from Thibodeau to Sheedy, and therefore from contending that the complaint was false due to a failure to perfect EOHHS's claim on the property.

Accordingly, the claim under section 1983 as to Tsai and Sudders will be dismissed.

### 5.  McHoul

McHoul represented Kuhn's estate in proceedings in the Probate Court.  All of the allegations against him in the amended complaint relate to that representation.

Because the statutory language, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," creates a state-action requirement, section 1983 rarely creates a right of action against private persons.  *See Aldrich v. Ruano*, 952 F. Supp. 2d

295, 301 (D. Mass. 2013).  It is also "well-settled that a lawyer (even a court-appointed one) does not act under the color of state law in performing a lawyer's traditional function as counsel to a party."  *Id.*  McHoul was thus not acting under color of state law by representing Kuhn's estate in the state-court proceedings.  Accordingly, the claim under section 1983 as to McHoul will be dismissed.

### C.    Claims under 42 U.S.C. §§ 1985(2) and 1985(3)

In addition to the claims under section 1983, Count Three purports to allege two other similar but separate causes of action under 42 U.S.C. §§ 1985(2) and 1985(3).

Section 1985(2) creates a cause of action where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws."  42 U.S.C. § 1985(2).  A claim under § 1985(3) requires proof of both a conspiracy and "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws."  *Perez–Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

Sections 1985(2) and 1985(3) both require the complaint to plead that a race- or class-based discriminatory motive lies behind the alleged conspirators' actions.  *See Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 91 (1971)).  Here, the amended complaint fails to allege any facts establishing that plaintiff is a member of a protected class or has suffered class-based discrimination.

In addition, the complaint does not plausibly allege with specificity any facts that, if true, would support a finding of a conspiracy, or how defendants acted in concert to deprive Kupperstein of his civil rights.  (Am. Compl. ¶ 201); *see Twombly*, 550 U.S. at 555 (plaintiff's obligation under Fed. R. Civ. P. 8(a) to provide the grounds of his claim "requires more than

labels and conclusions"); *Dallas v. Holmes*, 137 F. A'ppx 746, 752 (6th Cir. 2005) (*per curiam*)

(upholding dismissal under 28 U.S.C. § 1915(e)(2)(B) of claims under § 1983 that private

individuals conspired with law enforcement to perpetrate malicious prosecution: "Other than

general allegations of conspiracy to cause and influence a wrongful criminal prosecution,

Plaintiffs make no allegations of joint, concerted activity to deprive [plaintiff] of his civil

rights.").

Thus, the claims under sections 1985(2) and 1985(3) will also be dismissed for failure to

state a claim.

### D.   **State-Law Claims**

The amended complaint purports to request certain relief pursuant to state law.  Count

Two alleges that Governor Baker is vicariously liable for the negligence of the agents of EOHHS

and of the Probate Court, and seeks relief against him on that basis under the MTCA, Mass Gen.

Laws ch. 258, § 2.  (*Id.* ¶¶ 15, 198).  In addition, although not tied to enumerated counts, the

amended complaint alleges that Sudders and Tsai negligently hired the lawyers who represented

EOHHS in the actions at issue here.  (*Id.* ¶ 191).  It further alleges that Judge McMahon,

Sudders, Tsai, MacLeod, and McHoul committed certain unspecified "common law torts" that

"jointly and severally injured Kupperstein, and directly and proximately caused Kupperstein to

suffer financial harm, damage to his reputation, and intentional infliction of emotional distress."

(*Id.* ¶¶ 16-20, 260).[15]  Finally, it alleges that McHoul "tort[i]ously interfered with the Trust's sale

of the Property to []Boyle, a Buyer who signed a [purchase and sale agreement] to acquire the

property."  (*Id.* ¶ 257).

---

[15] As noted, Count One contains a demand for relief, but does not in fact allege any claim.  The Court will therefore consider it in connection with the other claims alleged against Judge McMahon.

### 1.   **Governor Baker**

The claim under the MTCA is alleged against Governor Baker in his official capacity. (Am. Compl. at 1; *id.* ¶ 15).  For purposes of sovereign immunity, suits for damages against state officials in their official capacities generally constitute suits against the state itself.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'  Suits against state officials in their official capacity therefore should be treated as suits against the State.") (citation omitted) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  Accordingly, the suit against Governor Baker in his official capacity is, for the purposes of sovereign immunity, a suit for damages against the Commonwealth of Massachusetts.  *See also Tyler v. Massachusetts*, 981 F. Supp. 2d 92, 95 (D. Mass. 2013) ("[A] plaintiff may not resort to the expedient of simply naming a state official as a defendant as a means of circumventing the Eleventh Amendment.").

"As a general matter, states are immune under the Eleventh Amendment from private suit in the federal courts, absent their consent."  *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002) (internal quotations omitted); *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought.").  The Eleventh Amendment has two exceptions:  "First, Congress may abrogate a State's immunity by expressly authorizing such a suit pursuant to a valid exercise of power.  Second, a State may waive its sovereign immunity by consenting to be sued in federal court."  *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 49 (1st Cir. 2003) (internal citations omitted).  Eleventh Amendment immunity is jurisdictional in nature, and "absent waiver, neither a State nor its agencies acting under its control may be subject to suit in federal court."  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*

*& Eddy, Inc.*, 506 U.S. 139, 144 (1993).

Neither of the exceptions to sovereign immunity apply here.  First, there has been no waiver of sovereign immunity by the Commonwealth.  Waivers must be "express," and there is nothing, express or otherwise, resembling such a waiver here.  *Limar Shipping Ltd. v. United States*, 324 F.3d 1, 6 (1st Cir. 2003).  Second, the MTCA, enacted in 1978, operates as a limited waiver of Eleventh Amendment immunity.  It provides that "[c]laims against the commonwealth, except as otherwise expressly provided . . . may be enforced in the superior court."  Mass. Gen. Laws ch. 258, § 12.  Nevertheless, the Supreme Judicial Court has clearly stated that this language does not constitute a waiver of the Commonwealth's Eleventh Amendment immunity to suit in federal court.  *Irwin v. Comm'r of Dept. of Youth Servs.*, 388 Mass. 810, 819-20 (1983).

Accordingly, Count Two—that is, the claim that Governor Baker is vicariously liable for the negligence of his agents at EOHHS and at the Probate Court—will be dismissed.

### 2. Judge McMahon, Sudders, Tsai, MacLeod, and McHoul

The amended complaint alleges that Judge McMahon, Sudders, Tsai, MacLeod, and McHoul committed certain "common law torts" that "jointly and severally injured Kupperstein, and directly and proximately caused Kupperstein to suffer financial harm, damage to his reputation, and intentional infliction of emotional distress."  (Am. Compl. ¶¶ 16-20, 260).  In addition, although not tied to enumerated counts, the amended complaint alleges that Sudders and Tsai "were negligent in retaining the lawyers [involved in the proceedings]," (*id.* ¶ 191), and that McHoul "tort[i]ously interfered with the Trust's sale of the Property to []Boyle, a Buyer who signed a [purchase and sale agreement] to acquire the property."  (*Id.* ¶ 257).

As noted, the only allegations in the amended complaint against Judge McMahon relate to orders he issued, and judicial immunity protects him from civil liability for those orders. Furthermore, as employees of EOHHS, and University of Massachusetts Medical School,

26

MacLeod, Sudders and Tsai are public employees immunized by the MTCA.  *See McNamara v. Honeyman*, 406 Mass. 43, 47 (1989) (reviewing Mass. Gen. Laws. ch. 75 and finding that "the university is an agency of the Commonwealth and thus is a public employer.").  Under the MTCA, individual public employees are immune from suits stemming from negligent conduct committed within the scope of their office or employment.  Mass. Gen. Laws ch. 258, § 2; *Wiesman v. Hill*, 629 F. Supp. 2d 106, 113 (D. Mass. 2009) (citing *Jackson v. Town of Milton*, 41 Mass. App. Ct. 908 (1996)).

Kupperstein has not alleged that MacLeod, Sudders, or Tsai were not acting within the scope of their employment.  In addition, none of the factual allegations in the amended complaint suggest that they intended to inflict emotional distress against him, which is the only intentional tort alleged.  *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-45 (1976) (noting that to state such a claim, a plaintiff must allege, among other things, "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct").  The allegations against Sudders and Tsai are for vicarious liability only (aside from his conclusory allegation that they were negligent in retaining the lawyers who prosecuted the actions in question, which is not actionable against them under the MTCA).  As to MacLeod, the amended complaint alleges that she knew that the Suffolk Superior Court complaint was false when she verified it, but as noted, he is prevented from relitigating the issue of the validity of the MassHealth lien (and thus, whether the complaint was false).

McHoul, on the other hand, is not protected by immunity or by the MTCA, and Kupperstein alleges that he tortiously interfered with his contract or business relationship with Boyle.  On June 4, 2015, she apparently signed an agreement to purchase the property, but when McHoul told her attorney that Sheedy's title to the property was "no good," she repudiated the

agreement.  (Am. Compl. ¶¶ 85-87).

To state a claim for tortious interference with a contract or business relationship, a plaintiff must allege:  "(1) the existence of a contract or business relationship which contemplated economic benefit; (2) the defendant['s] knowledge of the contract or business relationship; (3) the defendant['s] intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages."  *Swansen Dev. Corp. v. City of Taunton*, 423 Mass. 390, 338 (1996).

Among other issues, the amended complaint fails to allege that McHoul interfered with the contract for any "improper purpose."  *Id.*  Kupperstein is prevented from relitigating the issue of whether the transfer from Thibodeau to Sheedy was valid.  Therefore, to the extent McHoul told Boyle that title was "no good," he was proved correct.[16]

Accordingly, the state-law tort claims against Judge McMahon, Sudders, Tsai, MacLeod, and McHoul will be dismissed.

## IV.   <u>Conclusion</u>

For the foregoing reasons, defendants' motions to dismiss are GRANTED and the action is hereby DISMISSED.

**So Ordered.**

                                    /s/  F. Dennis Saylor IV
                                   F. Dennis Saylor IV
Dated:  July 21, 2021                    Chief Judge, United States District Court

---

[16] McHoul may also be protected by the absolute litigation privilege.  The Supreme Judicial Court has held that "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding."  *Sriberg v. Raymond*, 370 Mass. 105, 108 (1976); *see also Visnick v. Caulfield*, 73 Mass. App. Ct. 809, 812 (2009).  "The privilege extends to circumstances where the statements are made *preliminary* to a proposed or contemplated judicial proceeding as long as they bear some relation to the proceeding," and McHoul was already representing the estate at the time of the alleged conversation with Boyle.  *Fisher v. Lint*, 69 Mass. App. Ct. 360, 366 (2007) (emphasis added).